## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL MAYSE, <br><br> Defendants. | **Criminal Action No. 20-00236 (JXN)** <br><br><br> **OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Defendant Michael Mayse's ("Defendant" or "Mayse") motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure ("Rule") 29, or alternatively, a motion for a new trial pursuant to Rule 33. (ECF Nos. 498, 522). The Government opposed. (ECF No. 525). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1, which is applicable to criminal cases under Local Criminal Rule 1.1. For reasons set forth below, Defendant's motion is **DENIED**.

### I.    BACKGROUND AND PROCEDURAL HISTORY

From approximately February 2019 until February 2020, Mayse was part of a drug trafficking organization ("DTO") operating an "open-air narcotics market" in and around Stephen Crane Village ("Crane Village"), a public housing complex located on the border of Newark and Belleville, near Branch Brook Park. (1/8/25 Tr. 281:8-11; 322:6-13). Members of the DTO, including Mayse, regularly congregated within the pedestrian courtyards and in "Cashville," an area designated by the DTO on the south side of Crane Village to conduct hand-to-hand narcotics transactions. (*Id.* at 340:7-9, 13-17; 350:1-3; 411:13-25; 412:1).

The DTO also had certain stash locations within Crane Village, including an apartment at 964 Franklin Avenue (the "Stash Apartment"). (*Id.* at 340:7-12).

Using more than one confidential source ("CS") and an undercover law enforcement agent ("UC"), law enforcement conducted several controlled purchases of heroin, fentanyl, cocaine, and cocaine base from members of the DTO. (*Id.* at 316:1-7, 353:2-5, 357:18-25, 358:1-24). Prior to each controlled purchase, law enforcement outfitted the CS, UC and/or his/her vehicle with audio and video recording devices. (*Id.* at 359:14-23). Many of these controlled purchases also were captured, at least in part, by pole cameras law enforcement placed and controlled throughout Crane Village. (*Id.* at 363:3-15). Mayse had a managerial, enforcement role within the DTO. (*Id.* at 332:2; 338:23-24). Mayse was observed overseeing members of the DTO in Crane Village while they conducted narcotics transactions on several occasions, including on October 24, 2019. (*Id.* at 495-512:1-19).

On December 15, 2019, at approximately 3:30 a.m., Mayse murdered Victim-1, who was a member of and owed money to the DTO. (1/22/25 Tr. 1412:19-24; 1414:9-10; 1421:9-19).

When law enforcement arrived, they found Victim-1 in the Stash Apartment. (1/15/25 Tr. 898:11-15). He had three gunshot wounds in his head and three gunshot wounds in his chest. (1/22/25 Tr. 1396:8-10; 1439:20-22). Law enforcement also found vials of cocaine and glassine envelopes containing heroin in the Stash Apartment.

On December 15, 2019, an arrest warrant was issued for Mayse's arrest. (1/15/25 Tr. 911:9-15; 1/22/25 Tr. 1449:1-4). Four days later, with assistance from the FBI's Fugitive Task Force, Mayse was found hiding in an apartment in Newark, New Jersey (the "Hideout Apartment"). (1/15/25 Tr. 911:16-25-912:1-11). After approximately an hour, Mayse surrendered himself and was arrested. (*Id.* at 915:23-25; 919:9-17).

Search warrants were then applied for and authorized for the Hideout Apartment and a vehicle which had been utilized by Mayse and two other individuals around the time of the murder. (*Id.* at 919:19-21; 1/22/25 Tr. 1464:16-20). During the apartment search, law enforcement recovered, among other things, a Hi-Point C9 9mm handgun with serial number P1800803, a SCCY CPX-1 9mm handgun with serial number 191320 ("the SCCY Handgun"), twenty-nine vials of cocaine, two glassine envelopes of heroin, and Victim-1's cell phone. (1/15/25 Tr. 947:1-12; 972:3-7; 974:16-23; 983:5-22; 984:7-10; 987:18-22; 988:8-10; 989:16-20). Law enforcement also seized Mayse's jeans and his boots, which were both splattered with blood. (1/22/25 Tr. 1466:4-16; 1468:20-25-1469:1-5). The New Jersey State Police Office of Forensic Sciences, DNA Laboratory subsequently confirmed that Victim-1's DNA was found from the blood splatter on Mayse's jeans and boots, and from blood splatter found on the SCCY Handgun. (1/22/25 Tr. 1516:19-25-1517:1-9).

External surveillance video from the Hideout Apartment shows Mayse on December 15, 2019, leaving the Hideout Apartment at 12:11 a.m., and returning at 3:50 a.m., which is consistent with the timing of the murder. (1/17/25 Tr. 1326:11-25-1327:1-12; 1330:23-24). He was wearing a dark hooded sweatshirt, jeans, and boots (*Id.* at 1327:13-21); his jeans and boots were positive for Victim-1's DNA. (1/15/25 Tr. 1493:4-25-1495:1-10; 1497:19-25-1499:1; 1514:20-21; 1515:6-7, 14-15; 1516:22-25-1517:1, 7-8). Moreover, ballistics analysis of the shell casings found in the Stash Apartment near Victim-1 confirmed that the SCCY Handgun fired the rounds that killed Victim-1. (1/16/25 Tr. 1197:11-18).

On June 25, 2021, a grand jury returned a 37-count Superseding Indictment charging eight (8) defendants. (ECF No. 123).

On November 21, 2024, a grand jury returned a second Superseding Indictment against Mayse and one other Defendant. (ECF No. 425).

On January 6, 2025, Mayse went to trial. (ECF No. 457).[1] Defendant's trial lasted twelve (12) days. The Government presented testimony from thirty-one (31) witnesses. Before reaching its verdict, the jury deliberated for approximately six (6) hours.

On January 27, 2025, Mayse was convicted of conspiracy to distribute and possess with intent to distribute controlled substances (Count One), distribution and possession with intent to distribute controlled substances (Count Two), causing death through use of a firearm (Count Thirteen), using and carrying a firearm during and in relation to a drug trafficking crime (Count Fourteen), possession with intent to distribute controlled substances (Count Fifteen), possession of a firearm in furtherance of a drug trafficking crime (Count Sixteen), possession of a firearm and ammunition by a convicted felon (Count Twenty), and possession of a firearm by a convicted felon (Count Twenty-One). (ECF Nos. 489, 495). The jury also found (1) the weight of the mixture or substance containing heroin in Count One was 100 grams or more; (2) Mayse discharged the firearm in Count Fourteen during and in relation to the drug conspiracy; and (3) he knowingly possessed the loaded SCCY CPX-19-millimeter handgun, bearing serial number 191320, and the Hi-Point C9 9-millimeter handgun, bearing serial number P1800803, and both guns affected interstate or foreign commerce. (*Id.*).

On January 29, 2025, Mayse filed a motion for judgment of acquittal, under Rule 29, or in the alternative for a new trial, under Rule 33. (ECF No. 498).[2] On March 28, 2025, Mayse filed a

---

[1] Gary Shahid, Mayse's co-defendant, also went to trial. However, Mr. Shahid did not join in Mayse's motion or file a separate motion.

[2] The deadlines for Rule 29 and 33 motions are coordinated. "A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Mayse's Rule 29 and

brief in support of his motion. ("Def.'s Br.") (ECF No. 522). On June 2, 2025, the Government opposed. ("Gov't Br.") (ECF No. 525). Mayse did not reply. This matter is now ripe for consideration.

## II.    LEGAL STANDARD

### A. Judgment of Acquittal

Federal Rule of Criminal Procedure 29 requires the district court to enter a judgment of acquittal for "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Under Rule 29, the Court "must uphold the jury's verdict unless *no reasonable juror could* accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *United States v. Fattah*, 914 F.3d 112, 182-83 (3d Cir. 2019) (emphasis added). In reviewing the sufficiency of the evidence, the Court must view the evidence in the "light most favorable" to the Government, *id.* at 183, and "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)); *see also United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003) (The court must "sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision . . . .") (quoting *United States v. Beckett*, 208 F.3d 140, 151 (3d Cir. 2000)); *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002) ("It is not [the Court's] role to weigh the evidence or to determine the credibility of the witnesses.").

"A finding of insufficiency should be confined to cases where the prosecution's failure is clear." *Brodie*, 403 F.3d at 133 (internal quotation marks omitted). Consequently, "[t]he burden on

---

Rule 33 motions were filed on January 29, 2025, two days after the jury rendered its verdict and was discharged, and thus, timely.

a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *United States v. Salahuddin*, 765 F.3d 329, 348 (3d Cir. 2014); *see also United States v. Young*, 334 F. App'x 477, 480 (3d Cir. 2009) (A defendant bears "a heavy burden" to establish that the trial evidence was insufficient to support a conviction.); *United States v. Lore*, 430 F.3d 190, 203 (3d Cir. 2005).

B. New Trial

A defendant may move for a new trial pursuant to Federal Rule of Criminal Procedure 33, which provides in pertinent part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The court does not "view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)).

A new trial is required when evidentiary errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (citation modified). "[M]otions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court." *United States v. Martinez*, 69 F. App'x 513, 516 (3d Cir. 2003) (citing *United States v. Allen*, 554 F.2d 398, 403 (10th Cir. 1977)). And should be "granted sparingly and only in exceptional cases." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

### III.   **DISCUSSION**

Mayse argues the conspiracy conviction cannot stand because the Government failed to demonstrate that he was engaged in a conspiracy through which he intended to distribute and possess controlled substances. Further, because the conspiracy served as so the predicate offense for Counts Thirteen and Fourteen—causing death through use of a firearm and using and carrying a firearm during and in relation to a drug trafficking crime— these Counts should likewise be vacated. (Def.'s Br. at 4-5). Mayse further argues Count Two—distribution and possession with intent to distribute controlled substances—should be vacated because the Government failed to prove he aided and abetted in the sale of narcotics on the date underlying Count Two. (*Id.* at 5-6).

### A.  **Acquittal**

### i.     **Drug Trafficking Conspiracy (Count One)**

The evidence in this case is sufficient to sustain Defendant's conspiracy conviction. The essential elements for Count One of the Indictment, conspiracy to distribute and possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, are: (1) two or more persons agreed to distribute and possess with the intent to distribute a controlled substance; (2) Mayse was a party to or member of that agreement; and (3) Mayse joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that objective. (1/24/25 Tr. 1747:7-19) (Third Circuit Model Instruction 6.21.846B); *see also United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

As relevant here, conspiracy requires proof that Defendant knew of the conspiracy's illegal goal and agreed to work toward that goal. *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010); *United States v. Mastrangelo*, 172 F.3d 288, 291 (3d Cir. 1999). A conspiracy may be proven by direct or circumstantial evidence, and a jury may infer the existence of a conspiracy based on the totality of the evidence. *Brodie*, 403 F.3d at 134; *see also United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (listing requirements for conspiracy and principle that they may be proven entirely by circumstantial evidence). However, conspiracy "cannot be proven by piling inference upon inference where those inferences do not logically support the ultimate finding of guilt." *Id.* (citation modified).

Thus, "[t]he existence of a conspiracy 'can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding.'" *Smith*, 294 F.3d at 477 (quoting *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999) (quoting *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir.), *cert. denied*, 475 U.S. 1024 (1986))) (ellipsis in the original).

The Court "do[es] not view the government's evidence in isolation, but rather, in conjunction and as a whole. 'The court must determine 'whether all the pieces of evidence, taken together, make a strong enough case to let a jury find [the defendant] guilty beyond a reasonable doubt.'" *Brodie*, 403 F.3d at 134 (quoting *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) (quoting *United States v. Allard*, 240 F.2d 840, 841 (3d Cir.1957))); *see also* See also *United States v. United States Gypsum Co.*, 600 F.2d 414, 417 (3d Cir. 1979) ("'[T]he character and effect of a conspiracy (is) not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'") (citation omitted). "To sustain a conspiracy conviction, the

'contention that the evidence also permits a less sinister conclusion is immaterial . . . [T]he evidence [need not] be inconsistent with every conclusion save that of guilt.'" *Smith*, 294 F.3d at 478 (quoting *United States v. Dent*, 149 F.3d 180, 188 (3d Cir.1998)).

Mayse argues that "multiple drug dealers operating in the same location, servicing the same buyers, and sharing information about the drug trade does not necessarily imply the existence of a conspiracy." (Def.'s Br. at 4). However, while the jury could have drawn the inferences desired by Mayse, it was not required to do so.[3] *United States v. Lawal*, No. 24-1100, 2025 WL 752539, at *3 (3d Cir. March 10, 2025) (citing *United States v. Claxton*, 685 F.3d 300, 312 n.19 (3d Cir. 2012)).

Here, the trial record provided sufficient evidence for the jury to conclude Mayse was a member of and conspired with others in the DTO. The evidence included pole camera footage showing Mayse overseeing the DTO (1/8/25 Tr. 406:1-25-432:1-2); Mayse's own text messages directing drug sales by Victim-1 and the DTO (1/13/25 Tr. 614:4-25-616:1-25); numerous videos of the controlled purchases, including a purchase on October 24, 2019, where Mayse directed and oversaw the sale (1/10/25 Tr. 495-512:1-19), as well as direct, eyewitness testimony from D.B. and D.R. as to Mayse's role within the Stephen Crane DTO, and his murder of Victim-1 in the DTO's stash apartment because Victim-1 owed the DTO money. (1/17/25 Tr. 1269:16-25; 1272:13-24; 1315:19-25; 1316:20-25-1317:1-5; 1/22/25 Tr. 1412:19-25-1416:1-24). Such evidence is

---

[3] In *United States v. Caraballo-Rodriguez*, the Third Circuit admonished that "in this particular area—drug conspiracy cases—it appears that we [too frequently] examined sufficiency by looking at the evidence under a microscope." 726 F.3d 418 (3d Cir. 2013) (en banc). The Court went on to state "[t]oo often, we failed to ask whether any reasonable juror could conclude that the defendant knew the transaction involved drugs; instead, we reassessed the evidence independently." *Id.* at 431. The Court emphasized:

> While evidence proffered at trial may be consistent with multiple possibilities, our role as a reviewing court is to uphold the jury verdict—and not to usurp the role of the jury—as long as it passes the "bare rationality" test. Reversing the jury's conclusion simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges . . . It is up to the jury—not the district court judge or our Court—to examine the evidence and draw inferences.

*Id.*

sufficient to sustain Mayse's conspiracy conviction. *See, e.g., United States v. Tiangco*, 225 F. Supp. 3d 274, 282 (D.N.J. 2016) (denying defendant's Rule 29 motion where there was sufficient evidence presented, including direct witness testimony, for jury to conclude defendant participated in drug conspiracy); *id.* at 283 ("[Defendant's] contentions come nowhere near a Rule 29 showing that a judgment of acquittal is required.").

### ii.    Distribution and Possession with Intent to Distribute Controlled Substances on October 24, 2019 (Count Two)

The elements for Count Two, distribution and possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, are: (1) Mayse distributed a mixture or substance containing a controlled substance; (2) Mayse distributed the controlled substance knowingly or intentionally; and (3) the controlled substance was heroin, fentanyl, or cocaine. (1/24/25 Tr. 1758:3-11 (Third Circuit Model Instruction 6.21.841A)).

The elements for possession with intent to distribute are that Mayse: (1) possessed a mixture or substance containing a controlled substance; (2) possessed the controlled substance knowingly or intentionally; (3) intended to distribute the controlled substance; and (4) that the controlled substance was heroin, fentanyl, or cocaine. (1/24/25 Tr. 1758:12-22 (Third Circuit Model Instruction 6.21.841B)). The Court also instructed the jury as to aiding and abetting. (1/25/25 Tr. 1764:2-1766:6 (Third Circuit Model Instruction 7.02)).

Detective Sheridan's testimony established Mayse's direct involvement in the October 24, 2019, controlled purchase of narcotics from the DTO, including Mayse direction to Raquan Rawls to obtain the drugs to complete the sale. (1/10/25 Tr. at 495:9-518:1). The jury also watched the videos of: Mayse's direct involvement during the controlled purchase (*Id.* at 495:25-498:1-23; 502:14-25-507:1-25); the pole camera video depicting Mayse during the controlled purchase (*Id.* at 508:1-25-512:1-19); photographs of Mayse directing activities of the controlled purchase (*Id.* at

514:15-25-515:1-2); the drugs purchased from the DTO (*Id.* at 517:20-25-518:1-11). Viewing the totality of the evidence in a light most favorable to the Government, the evidence is sufficient to sustain a conviction on Count Two.

### iii.    Causing Death Through Use of a Firearm During and in Relation to the Conspiracy, and Using and Carrying a Firearm During and in Relation to the Conspiracy (Counts Thirteen and Fourteen)

Count Thirteen charged Mayse with causing death through use of a firearm during and in relation to the drug trafficking conspiracy, in violation of 18 U.S.C. § 924(j)(1). The elements for that offense are that Mayse: (1) used or carried a firearm; (2) did so during and in relation to a drug trafficking crime, specifically the drug conspiracy as charged in Count One of the Indictment; (3) caused the death of a person through the use of the firearm resulting in murder. (1/24/25 Tr. 1769:21-1770:5).

For Count Fourteen, using and carrying a firearm during and in relation to the drug trafficking conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), the elements are that Mayse: (1) committed the crime of the drug conspiracy, as charged in Count One of the Indictment; (2) during and in relation to the commission of that crime, knowingly used or carried a firearm; and (3) used or carried the firearm during and in relation to the drug conspiracy. (Tr. 1767:22-1769:20 quoting (Third Circuit Model Instruction 6.18.924B)). The jury also determined, via interrogatory for Count Fourteen, that Mayse discharged the firearm.

To obtain a conviction under § 924(c)(1)(A), the Government must also show the possession of a firearm "advanced or helped forward a drug trafficking crime." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). To determine whether the Government met its burden, there are eight relevant non-exclusive factors a court must analyze: "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is

stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.*

In addition to the evidence presented related to Defendant's conspiracy charge, the jury also was presented with the following regarding the murder of Victim-1: direct eyewitness testimony that Mayse murdered Victim-1 because Victim-1 owed Mayse money from the DTO's operations. (1/17/25 Tr. 1269:16-25; 1272:13-24; 1315:19-25; 1316:20-25-1317:1-5; 1/22/25 Tr. 1412:19-25-1416:1-24). The jury also heard witness testimony that after the police arrived Mayse tried to hide and that a subsequent search of 30 North 12th Street—the residence where Mayse was staying—revealed drugs and the murder weapon in his belongings. (*Id.* at 1332:15-17; 1335:2-1339:1-5). *See, e.g., United States v. Carey*, 72 F.4th 521, 530 (3d Cir. 2023) (finding sufficient evidence to support a § 924(c) conviction where loaded gun was recovered "near [defendant's] bed, close to his drugs and drug-trafficking paraphernalia"); *United States v. Iglesias*, 535 F.3d 150, 157 (3d Cir. 2008) (finding sufficient evidence to support a § 924(c) conviction due to "the proximity of the loaded magazine to the gun—and considering that the gun, magazine, and drug packaging paraphernalia all were stored together in the briefcase that was found in the same room as [the drugs]").

Additionally, the Government presented physical evidence, such as the SCCY handgun/murder weapon (1/15/25 Tr. 990:8-25-991:1-9); video evidence showing Mayse entering and exiting the DTO's stash apartment contemporaneous to the murder (1/13/25 Tr. 658:1-25-663:1-15); testimony from the medical examiner that Victim-1's cause of death was homicide (1/22/25 Tr. 1406:13-14); testimony from a ballistics expert that analysis of the shell casings found in the Stash Apartment near Victim-1 confirmed that the SCCY Handgun fired the rounds that killed Victim-1. (1/16/25 Tr. 1197:11-18); and DNA evidence that Mayse and Victim-1's DNA was

on Mayse's SCCY handgun/murder weapon and Victim-1's blood was on Mayse's jeans. (1/22/25 Tr. 1516:19-25-1517:1-9). Viewing this evidence in the light most favorable to the Government, it is sufficient to sustain Mayse's conviction on Counts Thirteen and Fourteen. *Brodie*, 403 F.3d at 134 ("In conducting the sufficiency inquiry, we do not view the government's evidence in isolation, but rather, in conjunction and as a whole.").

iv.    **Possession with Intent to Distribute Controlled Substances and Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Counts Fifteen and Sixteen)**

Count Fifteen, like Count Two, charged Mayse with possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Count Sixteen charged Mayse with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Counts Fifteen and Sixteen arise out of the heroin, cocaine, and Hi-Point firearm found among Mayse's personal belongings at the time of his arrest on December 16, 2019.

Mayse argues that the Government failed to show that Mayse was engaged in any drug trafficking activity on December 16, 2019. (Def.'s Br. at 7-8). However, regarding Count Fifteen the jury viewed the 10 vials of cocaine, 19 jugs of cocaine base, and 2 glassines of a fentanyl and heroin mixture, along with a cell phone and the SCCY handgun/murder weapon in Mayse's fanny pack. (1/15/25 Tr. 987:17-22; 988:8-10; 989:16-20; 1001:9-15). For Count Sixteen, the evidence included the Hi-Point 9mm handgun found among Mayse's clothing and Victim-1's cell phone in Mayse's suitcase adjacent to his fanny pack. (*Id.* at 981:11-25-982:1-25; 983:16-25-984:1-10). Such evidence is sufficient to sustain the convictions, mindful of this Court's role. *Brodie*, 403 F.3d at 133 ("Courts must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the

role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury").

### B. New Trial

Defendant also fails to meet the high standard for a new trial. This is not an "exceptional case" where a new trial is warranted. *Gov't of Virgin Islands*, 810 F.2d at 55. As discussed above, the weight of evidence presented at trial supports Mayse's convictions. Mayse does not set forth any arguments that meet the heightened standard for a new trial. To the extent the "arguments regarding the denial of his new trial motion essentially rehash those presented in support of his insufficiency of the evidence claim," there is no reason to believe that a "miscarriage of justice" occurred. *United States v. Shaker*, 827 F. App'x 204, 208 (3d Cir. 2020) (quoting *Johnson*, 302 F.3d at 150).

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for acquittal or in the alternative for a new trial (ECF No. 498) is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: July 30, 2025

JULIAN XAVIER NEALS
United States District Judge